At a Court of Oyer and Terminer held this term, Clement Hurley was indicted and tried for the murder in the first degree of Elizabeth Hurley, his wife. In consequence of his extreme intemperance *Page 29 
and cruel treatment of her when intoxicated, she had temporarily separated from him, and being at the house of a son of hers by a former husband, on Friday preceding her death, he went to see her and asked her when she was coming home, to which she replied, when the weather got better, and on the following Monday before her death he went to see her again and made the same inquiry of her and then said to her that he had a pint of whiskey and that day he thought they would be married, to which she replied that she had married him once to her sorrow, and she did not expect to live with him again until he got to be a sober man. He then said he wanted her to come home to him, and she would not be home three days before she was in hell. He was intoxicated at that time. On the Friday following she went home to him, and on the following Sunday morning her dead body was there found lying diagonally across the bed in which it was found, and entirely covered up and concealed from sight, on entering the room, in the bed clothes of it. Her throat and neck on both sides of it were bruised and were blue and swollen. The darkest part of the bruise, which was of the width of a man's hand, was on the right side, and there were prints or appearances of the pressure of fingers on the left side of the throat. Her left eye was also bruised and discolored, her left arm and shoulder had been severely bitten, the left thumb nearly off, and there was blood on the bed clothes, and on the wall near the head of the body, which looked as if it had been made by a bloody finger pressed against it. The body was also scratched in several places; and in the opinion of the physician who examined it, her death had been produced by choking and suffocation.
When the constable and the party which accompanied him arrived at the house to arrest the prisoner, they found him lying on the bed on which the dead body of the deceased lay, and when apprised by the officer of his object, he denied that he had killed her, but afterward admitted it both to him and to others. He was not then *Page 30 
drunk, but walked straight and talked rationally; he had, however, been drinking very hard for three weeks previous to the occurrence. For the defence it was proved, by one of the witnesses, that on Wednesday after his commitment to prison he had mania a potu, and by physicians, that a crime committed by a person in that condition, may have the effect, by emotional influences, to restore his reason. And also that he was a man of weak mind, but when sober that he was peaceable and inoffensive in his temper and disposition.
That malice was the essential ingredient and characteristic of the crime of murder, and was known to the common law as of two kinds, express malice aforethought and malice implied by law, as it is termed. In its legal sense malice had a broader and more comprehensive meaning than in its ordinary acceptation. In its latter sense it was understood to import simply hatred or ill-will entertained by one person against another, but in its former or legal sense, its meaning was broader and signified a wicked and depraved spirit or disposition regardless of social duty and fatally bent on mischief. According to the common law and our statute, express malice aforethought exists when the killing is done with a sedate, deliberate mind and formed design, evidenced by external circumstances, such as lying in wait for the purpose, antecedent menaces, former grudges, or in concerted schemes to do the party some great bodily harm. But these were only some of such external or attending circumstances which indicate the inward intention and serve to show the sedate and deliberate purpose or design to kill, or to do some act which necessarily results in death, and are therefore evidence of actual, positive, or as the law terms it, express malice. But when the act of killing is committed without such a sedate and deliberate mind and formed design to do it, and, there is no such act, or circumstances attending it which indicates coolness, deliberation, premeditation, or such a preconceived design and purpose, it is in contradistinction to the description or degree of malice before stated, implied malice, or malice implied by law; because although it is not proved, by such direct and conclusive evidence of actual malice and deliberate intent to kill, as in the preceding case, yet the facts and circumstances attending on the commission of the deed and the manner and the motive in and with which it is done, with enough of that calm and deliberate depravity and malignity of a bad heart which constitutes in all cases of murder the essential element or ingredient of the crime, and which the law *Page 33 
denominates malice, is sufficient to justify the presumption and to warrant the belief and conviction that it was committed with such a degree of deliberation as we have last mentioned, and therefore in such a case, the law presumes or implies that it was committed with malice. But at common law the crime is one and the same, whether committed with express or implied malice, and it is in either case murder of the same degree and punishable with death. When, however, the act is suddenly committed in the heat of blood or violet passion, upon an adequate and sufficient provocation given at the time, and without premeditation indicating coolness and design as before stated, and without time to cool, inasmuch as these conditions and circumstances are considered to rebut and repel any presumption or implication of malice whatever in such a case, it constitutes in contemplation of law the crime of manslaughter; and as every unlawful killing of one person by another is upon the proof of the act presumed in law to have been done with malice, and is prima facie murder, the law requires in every such case that the accused shall show to the satisfaction of the jury upon his trial, or that it shall so appear from the evidence on the part of the State, that it was done, not only without express malice aforethought, but also without implied malice, or in other words, that the act was committed under such attending circumstaces and conditions as before stated, as will have the legal operation and effect to negative and rebut the presumption or implication of any such malice on his part at the time when it was done. There are two instances given in the books which will serve to illustrate and explain more clearly the apparently nice distinction in the law on this point. The first is the case of a fight or combat between two persons, in which one in the heat of blood and passion produced by it, suddenly but without any previous preparation for it, such as providing himself beforehand with a dangerous or deadly weapon for the purpose, kills the other, in which case the circumstances *Page 34 
attending it, and the absence of any further proof to the contrary, negatives both in point of law and in point of fact any express malice aforethought, and also any presumption or implication of malice such as we have before described in defining the crime of murder with implied malice, and the crime is therefore manslaughter merely. But even in such a case as we have just stated, if the mortal blow is not struck, or the wound be not given during the conflict, nor until the party has afterward had time to cool and for reflection, it will not be manslaughter, but murder in either the first or second degree under the statute, according to the premeditation and deliberation with which the act may afterward be done, and the time which he may afterward have to cool and recover from the transport of passion occasioned by it. The other is the instance when one party is assailed by the other in a way and with out any means to seriously endanger his life or personal safety at the moment, and he suddenly and coolly kills him with a deadly weapon, without any necessity for resorting to such means to repel the attack or to save his life or person from great and imminent peril impending at the moment, and without any other provocation than the assault merely, it will not be manslaughter; but with no express malice aforethought in the case against him, and no other provocation than such an assault only, it will constitute, in contemplation of law, implied malice, and murder in the second degree under the statute.
It had been hypothetically suggested by the counsel for the prisoner that the facts and circumstances proved in this case, particularly as there was no proof, nor any indications whatever, that any other means than his hands and his teeth were used in killing the deceased, it furnished a strong and even violent presumption that it was the result of a sudden quarrel and fight between them, and that it was done in a sudden transport of rage and passion on his part produced by it, and without any premeditation or previous design to do it, such as would show *Page 35 
express malice aforethought, or even warrant or sustain the presumption that it was done with implied malice. He had also suggested and contended that the facts and circumstances proved warranted the opinion and belief that he must at the time have been utterly unconscious of what he was doing in consequence of his excessive and protracted indulgence in the use of intoxicating liquors for three weeks prior to it, and the secondary effects produced by it, resulting in a species of temporary insanity or madness termed mania a potu.
As to both of these suggestions the Court would simply remark and repeat what had before been said that when the unlawful killing has been proved in any case to the satisfaction of the jury, the law presumes or infers that it was done with malice, and that it is murder, until it is made to appear to the contrary from the evidence on the trial, and whatever the defence under the facts and circumstances proved may be, whether it is not guilty of murder, or not guilty at all, it is alike the duty of the accused to prove and establish to the satisfaction of the jury the particular defence on which he relies, unless it so appears from the evidence on the part of the State; and if he fails in this, it is the duty of the jury to return such a verdict as the facts and circumstances proved in the case and the law applicable to it requires. The facts and circumstances proved were all before the jury, the unhappy domestic relations subsisting between them as husband and wife, and the cause of them, the previous threat of the prisoner uttered a few days before the occurrence when in a state of intoxication, the return of the deceased in a short time thereafter to him and her home, with the sad and shocking condition in which her lifeless body was there found in two or three days thereafter, were all before the jury and they were the sole judges after calmly and dispassionately reviewing and maturely considering all of them, what should be the verdict in accordance with the evidence and the law which had been announced to them by the Court in the *Page 36 
case. It would be proper and necessary for the Court, however, further to notice and instruct them in regard to another matter of defence suggested by the counsel for the prisoner and which was that if the jury were satisfied from the evidence that he was drunk when he committed the act that the law in that case, repudiates and negatives the idea, or possibility that it could have been committed with express malice aforethought, and that consequently he cannot be convicted of the crime of murder in the first degree, or of any greater crime than murder in the second degree under the statute. But we are obliged to say to you that as a general rule in regard to such a defence, drunkenness is no excuse for murder or any other crime whatever, and there are but two cases in which it can have the effect to mitigate or extenuate the crime for which the prisoner stands indicted, one of which is when it is proved to the satisfaction of the jury that it was committed by the accused in a state of intoxication or drunkenness and upon a certain provocation given him by the party killed, and when a smaller provocation may be allowed to alleviate the offense, and reduce it from murder in the first to murder in the second degree under the statute, owing to the well-known fact that a person in that condition is more liable to be suddenly heated and blinded to a higher degree by angry passions than a sober man would be under the same, or a similar provocation. The other is when antecedent threats, menaces or malicious and revengeful expressions are proved to have been uttered by the accused when drunk or intoxicated, and when it always becomes a legitimate matter for the grave consideration of the jury whether they are but the idle and unmeaning declarations and denunciations of an angry and drunken man merely, or are properly to be regarded as of graver and more serious and sober import, denoting an actual intent to do what he threatens; for the law presumes a drunken man to be capable of conceiving and entertaining even express malice aforethought and perpetrating with premeditation and design murder in the first degree under the statute. *Page 37 
And this brings up to what was said by the counsel for the prisoner in regard to his defence on the ground of mania a potu, and on that subject the Court would say to the jury that if they were satisfied and believed from the evidence which they had heard, that the prisoner was at the time he committed the act affected with and laboring under an attack of that disease or malady and a brief and temporary madness or insanity, the result of protracted hard drinking of spirituous liquor for several weeks immediately preceding the commission of the act, and that he was thereby rendered positively unconscious of what he was doing and incapable of distinguishing between right and wrong with reference to the act he was then committing, it would constitute in law a complete and entire defence to the whole prosecution, and he should be absolutely acquitted. But that was a matter of defence not to be presumed, but must be proved like any other matter of defence in this case to the satisfaction of the jury, for otherwise it could be of no avail to the prisoner.
There is but one more matter which the Court feels called upon to notice in the case, and that was the concluding request of the counsel for the prisoner that we should instruct you that if after a mature consideration of all the evidence in it, you should have any reasonable doubt on this last point as to the mental capacity and criminal responsibility of the prisoner for the act in question, you should give him the "benefit of such doubt in making up your verdict. But the Court does not consider the rule of law so to be in relation to the plea or defence of insanity when the act of killing is conceded, admitted, or positively proved by the evidence. For every such homicide is presumed in law to be murder until the contrary appears, and every person is presumed to be of sound mind until the reverse is shown, and as insanity must be shown by the party who alleges or sets it up as a defence, it is incumbent and obligatory upon him to establish it as a fact in the case to the satisfaction of the jury. The rule alluded to as we understand it, has relation solely to *Page 38 
the corpus delicti, or to the act of killing in the case simply, and if the jury in any case of homicide after maturely considering and weighing all the evidence for and against the accused, entertain any reasonable doubt as to that fact, it is their duty to give him the benefit of it.
Although the indictment is for murder in the first degree only, it is competent for the jury to return and render a verdict of guilty of murder in the first or second degree, or of manslaughter, or of not guilty simply, as the law and the evidence in the case after mature deliberation may in their best judgment seem to warrant and require. Should, however, their conclusion be that the prisoner is not guilty of either offense by reason of insanity, their verdict should so state.
 Verdict — Guilty.